UNITED STATES, Appellee

v.

Joseph L. R. GRIJALVA, Senior Airman
U.S. Air Force, Appellant

No. 00-0558

Crim. App. No. 33169

United States Court of Appeals for the Armed Forces

Argued April 19, 2001

Decided July 10, 2001

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and SULLIVAN, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain Kyle R. Jacobson (argued); Colonel James
    R. Wise, Lieutenant Colonel Timothy W. Murphy, and Captain
    Karen L. Hecker (on brief); Captain Michael J. Apol.

For Appellee:  Lieutenant Colonel Michael E. Savage (argued);
    Colonel Anthony P. Dattilo, Major Lance B. Sigmon, and
    Captain Suzanne Sumner (on brief); Lieutenant Colonel Ronald
    A. Rodgers and Major Thomas C. Taylor.

Amicus Curiae:  Rebecca Copeland (law student) (argued); David A.
    Schlueter (supervising attorney), Mikel Eggert, and Julie K.
    Nelson (law students) (on brief) - For St. Mary's University
    School of Law.

Military Judge:  Keith L. Roberts

**This opinion is subject to editorial correction before publication**.

Judge GIERKE delivered the opinion of the Court.

Before a military judge sitting as a general court-martial, appellant entered pleas of guilty to attempted premeditated murder and desertion, in violation of Articles 80 and 85, Uniform Code of Military Justice, 10 USC §§ 880 and 885, respectively. The military judge accepted the plea of guilty to desertion but rejected appellant's plea of guilty to attempted premeditated murder. Appellant then entered a plea of guilty to the lesser-included offense of aggravated assault by intentional infliction of grievous bodily harm, in violation of Article 128, UCMJ, 10 USC § 928. After a trial on the merits on the greater offense, the military judge convicted appellant of attempted premeditated murder. The adjudged and approved sentence provides for a dishonorable discharge and confinement for 30 years. The Court of Criminal Appeals affirmed the findings and sentence. 53 MJ 501 (2000).

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE IMPROPERLY USED APPELLANT'S ADMISSIONS DURING HIS GUILTY PLEA INQUIRY TO A LESSER-INCLUDED OFFENSE AS PROOF THAT HE WAS GUILTY OF THE GREATER OFFENSE, IN VIOLATION OF THE FIFTH AMENDMENT TO THE CONSTITUTION, MILITARY RULE OF EVIDENCE 410, ARTICLE 45, UCMJ, THE INTENT OF CONGRESS, AND CASE LAW.[1]

For the reasons set out below, we affirm.

---

[1] We heard oral argument in this case at the St. Mary's University School of Law in San Antonio, Texas, as part of this Court's Project Outreach. See United States v. Allen, 34 MJ 228, 229 n.1 (CMA 1992).

## Factual Background

Appellant's offer to plead guilty to attempted premeditated murder and desertion was pursuant to a pretrial agreement that capped confinement at 25 years. The charges arose from a long period of marital discord and mutual accusations of infidelity that culminated when appellant shot his sleeping wife in the back with a .380 caliber handgun.

During the inquiry into the providence of appellant's plea of guilty to attempted premeditated murder, appellant told the military judge that he did not intend to kill his wife when he purchased the handgun and ammunition on the day before the shooting. He said that when he entered the house, his wife was sleeping on the living room floor, with their infant daughter lying beside her. He saw a number of photographs of himself and his wife that were torn up. The sight of the torn photographs made him angry. He said that he sat down for a while, trying to decide whether to awaken his wife or leave the house. After a while, he "just got up and just took the gun and [he] pulled the trigger." He said that he moved their daughter into a bedroom "[b]ecause I didn't want her inside the same room in case we started arguing or in case I shot the gun off or in case -- I just didn't want her in the same room if anything happened." After he shot his wife, his daughter came out of the bedroom. He grabbed his daughter and left.

Appellant vacillated on the issues of premeditation and intent. Several times he told the military judge he intended to kill his wife. At other times, he said he did not know what he intended. He also told the military judge that he lost control

and acted in the heat of passion.  At one point, he told the
military judge that he intended to shoot his wife and then shoot
himself, but that he knew his wife was not going to die and
"whatever happened would happen afterwards."  He said he intended
to shoot his wife but "really didn't want her to die."  Upon
further questioning by the military judge, he said that he did
not intend to kill his wife, but he gave the military judge
answers necessary to support a guilty plea because he "wanted to
get this over with."  He said that he "didn't want to go to
trial," and he "wanted to get this done as quick [sic] as
possible."  At that point, the military judge rejected the plea
of guilty to attempted premeditated murder, and the Government
withdrew from the pretrial agreement.

After a short recess, appellant's counsel informed the
military judge that appellant desired to plead guilty to
aggravated assault by intentional infliction of grievous bodily
harm, a lesser-included offense of attempted premeditated murder.
Appellant adhered to his earlier request for a bench trial.
Defense counsel sua sponte announced that appellant did not
desire to challenge the military judge based on information
obtained during the previous plea inquiry.

The military judge began his inquiry into appellant's guilty
plea to aggravated assault by advising him that some of his
admissions during the plea inquiry could be used by the
prosecution to prove the greater offense of attempted
premeditated murder.  He also advised appellant that he might
consider anything appellant told him regarding the elements of

4

the lesser offense in deciding whether appellant was guilty of the greater offense.

During this second plea inquiry, the military judge told appellant, "Let's go back then similar to the discussion we had this morning and I want you to tell me in your own words the facts and circumstances surrounding the offense you've now pled guilty to, aggravated assault by intentionally inflicting grievous bodily harm with a loaded firearm." When appellant did not respond, the military judge said, "Tell me about it again, please." Appellant then described the shooting as follows:

> When I went to the house I had the gun and when I walked in at first I was going to shoot her and then shoot me. I didn't think she was going to die. There was no way she was going to die after I shot her. When I walked in I moved the baby and I put the baby in the middle room. And that's when I came back and sat down for a while. And I guess after sitting there for a while I got up and took the gun and shot it at her direction. I wasn't aiming. I just shot and I thought to myself whatever happens happens. And that's when -- after the gun went off that's when the baby came out. I grabbed the baby and I left.

In response to questioning by the military judge, appellant repeated that his wife was asleep on the floor with her back to him when he shot at her. He told the military judge that his wife said she could not feel her legs, and that he later learned the gunshot damaged her spine. Asked about his specific intent when he shot his wife, he said, "Well, when I shot I just -- I didn't know what was going to happen. I just shot. It was just whatever happened happened was what was going through my mind. I just picked up the gun and shot." Asked to describe again why he shot his wife, appellant said:

> I was just mad because of all the stuff that was going on, all the arguing, all the fighting. And we were

5

arguing about who was going to take care of the kids, and who got custody of the kids. And just all -- like I said all the arguing, the divorce, talking about divorce. All that was going through my mind.

Finally, he told the military judge that he did not see where the gunshot hit his wife because he did not look. He learned afterwards about the nature and extent of her injuries. The military judge accepted appellant's plea of guilty to aggravated assault but did not enter findings because the prosecution intended to present evidence on the greater charged offense. The only contested issues were premeditation and intent. The prosecution presented the following evidence to prove premeditation and intent to kill.

Appellant and his wife quarreled on Thursday, September 11, 1997. The quarrel ended when the security police were called, apparently by both appellant and his wife, and appellant left the house and stayed with friends. As a result of the quarrel, appellant's commander ordered him to stay away from the house for 72 hours.

On Saturday, September 13, appellant requested termination of telephone service to his home, and it was terminated on the same day. On Sunday, September 14, his wife requested that service be restored, but restoration was not scheduled to be accomplished until September 17.

On Saturday night, appellant went to the Noncommissioned Officers' (NCO) Club with a friend. At the NCO Club, he saw his wife with several female friends. He became upset, had tears in his eyes, and was trembling. His friend took him to a diner to calm him down. They drank coffee and talked for about three

6

hours.  Appellant's friend was afraid that appellant would attempt suicide, as he had done previously.

On Friday, Saturday, and Sunday, appellant withdrew $100, $200, and $300, respectively, from his on-base credit union account.  On Sunday, September 14, appellant purchased travel-sized toiletries and a handgun and ammunition.

On Monday morning, September 15, after the no-contact order had expired, appellant went to his house.  When he left his place of duty, he lied to a co-worker, telling him that he was going to talk to his lawyer.  His wife was sleeping on the living room floor, with their two-year-old daughter sleeping next to her.  His wife was awakened when she felt and heard the gunshot.  She saw appellant standing over her, holding a pistol and a pillow.  There was no evidence that the pillow was used as a silencer.

When appellant's wife asked him why he shot her, appellant said nothing, but he shook his head from side to side and sat down on a loveseat.  Appellant's wife lost the feeling in her legs.  Appellant asked her why she did not talk to him at the NCO Club.  She was crying and asked appellant to get help.  He responded that it was too late.  Their infant daughter ran into the room and also started crying.  Appellant sat on the loveseat for about 20 minutes.  Then he took their infant daughter and departed, leaving his wounded wife on the floor.  He returned to his duty station for a short time and then fled to Arizona, where he was apprehended four days later.

Appellant's wife picked up the pistol and fired five shots out a window in an effort to attract attention.  She began having difficulty breathing, but she dragged herself into the kitchen

7

and shouted for help.  She tried to summon help on the telephone, but it was not working.

Eventually, a neighbor called the security police, and medical personnel were called to the scene.  Medical examination revealed a single bullet wound in her back, slightly to the right of the spinal column.  There was no exit wound.  She suffered a collapsed lung, a wound to the left wall of her liver and front side of her stomach, and a hole in her left diaphragm.  She was in critical condition when medical help arrived and probably would have died soon thereafter if help had not arrived.

The defense rested without presenting any evidence on the merits.  After entering findings of guilty, the military judge announced special findings on the issues of premeditation and intent to kill.  His special findings included the following:

> On 15 September, the accused went to the couple's home within a few hours after the no-contact order from his commander expired and found Mrs. Grijalva and their youngest daughter asleep on the floor. As he stated during the providency inquiry, the accused went to the house with the intent to shoot his wife. He moved their daughter in the bedroom so that she wouldn't be injured when he shot his wife. He came back from the bedroom, sat down for 10-15 minutes, pulled the handgun out of his BDU [battle dress uniform] pants and shot his wife in the back. . . .

>        \*   \*   \*

> As I stated above and should be obvious from the court's findings, I found that the government proved, beyond a reasonable doubt, that the accused shot his wife with the premeditated design to kill her. His own admission that he intended to shoot his wife; his action prior to the shooting; the removal of their daughter from the line of fire; the actual shooting of her in the back while she slept; his refusal to get medical attention for her, knowing that she was shot in the back and could not move her legs . . .; and her life threatening injuries all established beyond a reasonable doubt that the accused had the premeditated

8

> design and intent to kill his wife on 15 September
> 1997, and he attempted to do so.

(Emphasis added.)

## Discussion

Appellant contends that the military judge violated Article 45(a), UCMJ, 10 USC § 845(a), Mil. R. Evid. 410, Manual for Courts-Martial, United States (1995 ed.),[2] and his Fifth Amendment privilege against self-incrimination by convicting him of attempted premeditated murder based in part on his admissions during the inquiry into his failed guilty plea and his guilty plea to the lesser-included offense. The Government argues that appellant waived any violation of Mil. R. Evid. 410 by failing to object when the military judge elicited and considered admissions that went beyond the elements of the lesser-included offense. The Government concedes that the military judge improperly considered appellant's statements that he removed his infant daughter from the area and watched his wife for a while before shooting her, both of which were elicited on the issue of premeditation during the inquiry into the rejected guilty plea to the greater offense. The Government argues, however, that this error was harmless beyond a reasonable doubt.

Amicus curiae argue that the military judge was not permitted to use appellant's statements in the first plea inquiry as the foundation for questions during the inquiry into the second guilty plea to a lesser-included offense. They argue that

---

[2] The current version of this Manual provision is the same as the one in effect at the time of appellant's court-martial.

by relying on appellant's statements during the first plea inquiry, the military judge was improperly making derivative use of appellant's statements, in violation of Article 45 and Mil. R. Evid. 410. Finally, amicus curiae argue that the military judge erred by considering appellant's admissions regarding the lesser-included offense as substantive proof of the greater offense.

Article 45(a) requires that when a plea of guilty is rejected as improvident, "a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." Mil. R. Evid. 410 prohibits use of evidence of a guilty plea that is withdrawn, as well as "any statement made in the course of any judicial inquiry regarding" the rejected guilty plea. In United States v. Vasquez, 54 MJ 303, 305 (2001), this Court emphasized the importance of avoiding "[a]n excessively formalistic or technical approach to this rule[.]" The protection of Mil. R. Evid. 410 also applies "by implication" to a plea that is rejected by the military judge. United States v. Heirs, 29 MJ 68, 69 (CMA 1989).

If a plea of guilty is rejected, any statement made by an accused during the plea inquiry is inadmissible. Id. In United States v. Shackleford, 2 MJ 17, 20 n. 6 (CMA 1976), this Court opined, "It would violate the spirit, if not the letter, of Article 45(a)… to utilize evidence procured during a guilty plea inquiry to later convict or impeach an accused whose plea was rejected." This Court has long recognized, however, that a guilty plea to a lesser-included offense may be used to establish "facts and elements common to both the greater and lesser offense within the same specification[.]" See United States v. Caszatt,

11 USCMA 705, 707, 29 CMR 521, 523 (1960), quoting United States v. Dorrell, 18 CMR 424, 425-26 (NBR 1954), and citing with approval United States v. Wasco, 8 CMR 580 (NBR 1953); United States v. Rivera, 23 MJ 89, 95 (CMA 1986); see also RCM 920(e) (when guilty plea to lesser-included offense has been accepted, members should be instructed to accept as proved the matters admitted by the guilty plea).

In United States v. Gray, 51 MJ 1, 25 (1999), this Court held that it was permissible for a court-martial to consider an appellant's admissions made in connection with his guilty pleas in a state court proceeding. See United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997) (guilty plea admissible in subsequent collateral trial as admission by party opponent); United States v. Benson, 640 F.2d 136, 139 (8th Cir. 1981) (prohibition against admission of statements made in connection with pleas of guilty does not apply where guilty plea is accepted).

A military judge's failure to correctly apply the law is an abuse of discretion. United States v. Sullivan, 42 MJ 360, 363 (1995). If the military judge erred by considering statements made by appellant that were outside the waiver of the right against self-incrimination that follows from a provident plea of guilty, the error would be of constitutional dimension. When there has been an error of constitutional dimension, this Court may not affirm unless it is satisfied that the error was harmless beyond a reasonable doubt. Arizona v. Fulminante, 499 U.S. 279, 295 (1991). We review de novo the issue whether constitutional error was harmless beyond a reasonable doubt. Id.; 2 Steven

Childress & Martha Davis, Federal Standards of Review § 7.03 at 7-10 (3rd ed. 1999).

Applying the foregoing principles, we reaffirm this Court's holding in Caszatt, supra, and we hold that the military judge did not err by considering appellant's admissions concerning the elements of the lesser-included offense of aggravated assault. We accept the Government's concession that the military judge erred by considering appellant's admissions that he removed his infant daughter from the area and that he watched his wife for a while before shooting her, because these admissions pertained to the element of premeditation, an element of the greater offense to which the guilty plea was rejected. For the same reason, we hold that the military judge erred by considering appellant's admission that he went to the house with the intent to shoot his wife.

However, we hold that the military judge's error was harmless beyond a reasonable doubt. Appellant's act of removing his daughter from the room was not a significant factor in the determination whether appellant was guilty of the greater or lesser offense. He likely would have removed the child from the room whether he intended to kill his wife, injure her, or merely scare her. Furthermore, the evidence of premeditated intent to kill, separate and apart from appellant's admissions during the rejected plea of guilty, was overwhelming and uncontested. The prosecution's uncontested evidence established that on the day before he shot his wife, appellant terminated the telephone service to the house, purchased a handgun and ammunition, and made preparations to flee. On the morning of the shooting, he

concealed the purpose of his visit to his home by lying to a co-worker. The evidence established that appellant shot his sleeping wife in the back at close range and inflicted life-threatening injuries, told her that it was "too late," watched her for 20 minutes with callous indifference to her tearful pleas for help as she lay paralyzed on the floor, and left her alone in the house without the means to summon help. In light of this powerful and uncontested evidence, we are satisfied that the military judge's erroneous consideration of appellant's admissions during the inquiry into the rejected plea of guilty was harmless beyond a reasonable doubt.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.