UNITED STATES, Appellee

v.

Brandon M. RESCH, Private
U.S. Army, Appellant

No. 06-0863

Crim. App. No. 20030587

United States Court of Appeals for the Armed Forces

Argued April 25, 2007

Decided June 22, 2007

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN and RYAN, JJ., joined. STUCKY, J., filed a
separate opinion concurring in part and dissenting in part.

Counsel

For Appellant: Captain Richard P. Pizur (argued); Colonel John
T. Phelps II, Lieutenant Colonel Steven C. Henricks, Major Fansu
Ku, and Captain Julie A. Caruso (on brief); Major Billy B.
Ruhling III.

For Appellee: Captain Clare L. O'Shaughnessy (argued);
Lieutenant Colonel Francis C. Kiley, Lieutenant Colonel Michele
B. Shields and Captain Magdalena A. Acevedo (on brief); Colonel
John Miller, II.


Military Judge: Robert Smith

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a military judge sitting alone as a special court-martial. In accordance with his pleas, he was convicted of larceny and breaking restriction, in violation of Articles 121 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 934 (2000). Appellant pleaded guilty to an unauthorized absence, but was convicted contrary to his plea of the greater offense of desertion, in violation of Article 85, UCMJ, 10 U.S.C. § 885 (2000). The adjudged and approved sentence included confinement for 150 days and a bad-conduct discharge. The United States Army Court of Criminal Appeals affirmed. United States v. Resch, No. ARMY 20030587 (A. Ct. Crim. App. June 27, 2006)(unpublished).

We granted review of the following issues:

I. WHETHER THE MILITARY JUDGE IMPROPERLY CONSIDERED APPELLANT'S STATEMENTS DURING THE GUILTY PLEA INQUIRY TO THE LESSER-INCLUDED OFFENSE OF ABSENCE WITHOUT LEAVE IN DETERMINING APPELLANT'S GUILT TO THE GREATER OFFENSE OF DESERTION.

II. WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT A FINDING OF GUILTY THAT APPELLANT DESERTED HIS UNIT WITH THE INTENT TO REMAIN AWAY PERMANENTLY.

III. WHETHER THE ACCUSED'S PLEA BY EXCEPTIONS AND SUBSTITUTIONS TO AN UNAUTHORIZED ABSENCE FROM 11 APRIL 2002 TO 22 JANUARY 2003 WAS PROVIDENT WHERE APPELLANT CLAIMED HE CONTACTED HIS RECRUITER PRIOR TO 29 OCTOBER 2002, AND THE MILITARY JUDGE DID NOT RESOLVE WHETHER THIS CONTACT CONSTITUTED A TERMINATION OF THE ABSENCE.

   IV.  WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT
   A FINDING OF GUILTY TO EITHER DESERTION OR UNAUTHORIZED
   ABSENCE THAT TERMINATED ON 17 MARCH 2003.[1]

BACKGROUND

Appellant was charged with the offense of desertion terminating on March 17, 2003.  He pleaded guilty by exceptions to the lesser included offense of unauthorized absence beginning April 11, 2002 and terminating on January 22, 2003.  Appellant indicated during the providence inquiry that he left because of his mother's financial problems and deaths in his girlfriend's family.  While he was away, Appellant returned to Michigan where he took a civilian job and was arrested twice by local law enforcement.  The second arrest, which took place on October 29, 2002, resulted in a conviction for uttering forged checks at a convenience store located near Selfridge Air National Guard Base.  Appellant was confined at the Macomb County Jail in Michigan from the date of this arrest until he was released on January 22, 2003, after being sentenced to probation and time served.

During his colloquy with the military judge, Appellant also stated that he had "contacted" his recruiter, whom he described as "more or less the middleman between myself and the company." Upon further questioning by the military judge, Appellant stated that this contact had occurred prior to his arrest for uttering,

---

[1] Issues III and IV were specified by the Court.

and that the recruiter had told him that he had been "dropped from the rolls" and that he "would not be able to return to any military branch or any U.S. service."

Further, Appellant stated that while he was in confinement at the Macomb County Jail, he met prisoners and guards who had been in the Air Force, and they had informed him that "you have to sign paperwork in order to get out of any military service." According to Appellant these individuals also told him that if the military wanted him back "they would apprehend me more than likely on my way out [of] jail." After his release from the Macomb County Jail on January 22, 2003, when he was not picked up by military authorities, Appellant said he believed that "[i]n my mind, it had actually been cleared up."

Pursuant to a pretrial agreement, Appellant entered into a stipulation of fact. The stipulation included, among other things, the circumstances surrounding his two arrests in Michigan. The stipulation of fact also explained how Appellant was returned to military control:

> During March 2003, Detective Kapuscinski ("Kappy"), Macomb County Sheriff's Office, Violent Crimes Task Force, received a faxed warrant for the accused. Aware of the accused's January conviction and knowing his whereabouts, Detective Kappy called the accused's girlfriend to attempt to locate the accused. The accused was living with his girlfriend at her home at the time and, unable to reach the accused by phone, Detective Kappy notified the accused's girlfriend of his AWOL status. . . .

4

The Accused contacted Detective Kapuscinski and arranged to turn himself in at the Macomb County Sheriff's Office. The accused admitted to Detective Kapuscinski that he had fled the Army and that he had been working construction during the time of his absence.

The stipulation went on to state that after he contacted Detective Kapuscinski, Appellant flew back to Washington, D.C. from Michigan and returned to his unit on March 17, 2003.

The first paragraph of the stipulation contains the following statement: "These facts may be considered by the Military Judge in <u>determining the providence of the accused's plea of guilty</u>, and they <u>may be considered by the sentencing authority</u> . . . even if the evidence of such facts is deemed otherwise inadmissible." (emphasis added). Curiously, the stipulation also included a fourth paragraph titled, "Stipulation to Admissibility of Evidence." This paragraph contains the following statement: "the following evidence is <u>admissible at trial</u>, may be considered by the military judge in <u>determining the providence of the accused's plea of guilty</u>, and <u>may be considered by the sentencing authority</u> . . . ." (emphasis added). It then lists the following prosecution exhibits:

    PE 1 Stipulation of Fact[2]
    PE 2 ERB [Enlisted Record Book]
    PE 3 OMPF [Official Military Personnel File]
    PE 4 Accused's sworn statement, dated 4 April 2003

---

[2] The very document at issue here and in which the above cited paragraphs appear.

5

 PE 5 Civilian conviction (bates stamped pages 000027 –
 000028)
 PE 6 Videotape from PX shoplifting, 23 April 2003

While advising Appellant on how the stipulation would be used,
the military judge explained that the stipulation of fact "would
be used in two ways:  First . . . to determine if you are, in
fact, guilty of the offenses to which you have pled guilty.
Second, I will . . . [sic] use it in determining an appropriate
sentence for you."  After ensuring that Appellant understood how
the stipulation would be used, the military judge was about to
proceed when trial counsel pointed out that Paragraph IV of the
stipulation incorporated several other prosecution exhibits.
However, and possibly as an oversight, the military judge failed
to advise Appellant as to the language in Paragraph IV and how
it differed in significant respect from the language in
Paragraph I.  Here, the military judge only secured Appellant's
understanding that he was agreeing to "the introduction" of the
listed exhibits but did not specify or obtain Appellant's
understanding how the exhibits could be used.

 The military judge ultimately accepted Appellant's plea of
guilty to an unauthorized absence terminating on January 22,
2003.  The Government elected to go forward on the greater
offense of desertion, which required proof of the additional and
contested element that "at some time during the absence,
[Appellant] intended to remain away from his . . . unit,

organization, or place of duty permanently." Manual for Courts-Martial, United States pt. IV, para. 9.b.(1)(c) (2002 ed.) (MCM). The Government further sought to prove a later termination date of March 17, 2003 as charged. The Government's case consisted of a single witness, Appellant's company commander, Captain (CPT) Trotter. CPT Trotter testified that he had become the commander of B Company, 3rd United States Infantry, The Old Guard, in October 2002. On March 17, 2003 he was surprised to see Appellant in formation for the first time, at which point he turned to the platoon sergeant and asked, "[e]xcuse me, Sergeant. Who is this guy standing in my formation?"

The Government rested without calling any other witnesses and did not move to admit any other documentary evidence. Appellant did not put on a defense case. After the defense rested, trial counsel asked to "clarify that the providence inquiry will not be considered by the court as a defense to the greater offenses?" Defense counsel responded that "[w]e believe the contents of the providence inquiry can be used for proving the elements of the greater offense. Therefore, we believe the defense can also use anything exculpatory elicited in the providence inquiry as well." The military judge concluded that he could "consider the stipulation of fact and everything I have

heard up to now in determining the guilt or innocence of Private Resch on the greater offense."

Despite his initial objection, trial counsel used the facts contained in the stipulation of fact and the providence inquiry in his closing to argue that Appellant had formed the intent to stay away permanently. Among other things, trial counsel argued that it was circumstantial evidence of an intent to remain away that Appellant had established a job and was living with his girlfriend in Michigan; that Appellant had said in his sworn statement during the plea inquiry that he stayed in Michigan even after "the problems for which he left had been cleared up"; and that Appellant's belief formed upon his release from the Macomb County Jail that "he had no more obligations to the Army" implied that he had the intent to remain away permanently. Defense counsel argued that, based on Appellant's conversation with the recruiter and what he had been told in jail, Appellant was under "a reasonable mistake of fact as to his obligation to return to military service." The military judge found Appellant guilty of desertion terminating on March 17, 2003.

DISCUSSION

Appellant argues that it was plain error for the military judge to use Appellant's providence inquiry statements, the stipulation of fact, and the attachments to the stipulation of fact to determine whether Appellant was guilty of desertion.

8

Before a plea of guilty may be accepted, a trial judge is required to advise the accused that his guilty plea waives his constitutional rights to a jury trial, to confrontation of his accusers, and his privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 243 (1969); United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969). In military practice, Article 45, UCMJ,[3] requires the military judge to address the accused personally and explain the rights he is giving up, and to obtain the accused's express waiver of these rights. See Care, 18 C.M.A. at 541, 40 C.M.R. at 253. In addition, the military judge is obligated to ensure that an accused understands the provisions of any pretrial agreement, and to ensure that the parties agree to the terms set forth in the agreement. United States v. Bartley, 47 M.J. 182, 186 (C.A.A.F. 1997); United States v. Green, 1 M.J. 453, 456 (C.M.A. 1976); Rule for Courts-Martial (R.C.M.) 910(f)(4)(A). Moreover, the military judge must ensure that the accused freely consents to enter into any stipulation of fact or stipulation of expected testimony. R.C.M. 811(c).

In accordance with these principles, the military judge advised Appellant that his guilty plea waived his right against self-incrimination. He further advised Appellant that "you are giving up these rights as to the offenses you've pled guilty to.

---

[3] 10 U.S.C. § 845 (2000).

9

To that greater offense of desertion, you retain those rights." When defense counsel asked the military judge to consider Appellant's providence inquiry statements after the close of the Government's evidence, the military judge concluded that he could "consider . . . everything I have heard up to now" without further questioning or advising Appellant. This, of course, was error since it was inconsistent with the advice the military judge gave Appellant on the greater offense of desertion and therefore, beyond Appellant's express waiver of his privilege against self-incrimination. See United States v. Grijalva, 55 M.J. 223, 227-28 (C.A.A.F. 2001).

Military law imposes an independent obligation on the military judge to ensure that the accused understands what he gives up because of his plea and the accused's consent to do so must be ascertained. Here, the military judge's colloquy with Appellant was insufficient to ensure that Appellant understood the effect of the stipulation of fact entered into with the Government.

The military judge expressly advised Appellant that the stipulation would be used for the limited purposes of determining the providence of Appellant's guilty pleas and for determining the sentence. Although the last paragraph of the stipulation suggested a broader use by the prosecution of the stipulation and the included exhibits, the military judge

conducted no inquiry into this provision to clarify the apparent inconsistency between Paragraph I and Paragraph IV of the stipulation of fact.  Without further inquiry on the record, there is an insufficient basis to determine that Appellant knowingly consented to the use of the stipulation and the adjoining exhibits in the Government's case on the merits of the desertion offense in light of the wording of Paragraph I and the military judge's prior advice to Appellant.

Further, we conclude that these errors resulted in material prejudice to Appellant's substantial rights.  Without Appellant's statements and the facts admitted in the stipulation, the Government's case on desertion consisted of CPT Trotter's testimony that the first time he saw Appellant was on March 17, 2003.  This testimony was insufficient to establish Appellant's intent to remain away permanently or to establish the later termination date.  MCM pt. IV, para. 9.c.(1)(c)(v) ("Proof of, or a plea of guilty to, an unauthorized absence, even of extended duration, does not, without more, prove guilt of desertion").  To the contrary, Appellant's presence at formation would seem to bely an intent to remain away permanently.  Here, the Government was allowed the benefit of the additional facts contained in Appellant's statements during the providence inquiry, the stipulation of fact, and the sworn statement to prove the element of intent to remain away

11

permanently. These facts included Appellant's statements implying that he did not intend to go back after he got out of jail, as well as circumstantial evidence that Appellant was living in Michigan, had a job there, and was living near an Air National Guard base. See MCM pt. IV, para. 9.c.(1)(c)(iii) (permitting inference of intent to remain away where there is evidence "that the accused could have conveniently surrendered to military control but did not").

In addition, the Government's evidence was insufficient to prove the later termination date of March 17, 2003. Although the stipulation of fact stated that Appellant returned to Fort Meyer on March 17, 2003, after he was contacted by Detective Kapuscinski, it was improperly considered on the contested offense of desertion. Appellant pled guilty by exception and substitution to an unauthorized absence terminating on January 22, 2003. The Government was therefore required to prove that Appellant "remain[ed] so absent in desertion until on or about 17 March 2003" when it proceeded on the greater offense. "[V]iewing the evidence in the light most favorable to the prosecution," CPT Trotter's testimony of when he first noticed Appellant in the formation does not provide legally sufficient evidence that would permit a "rational trier of fact" to conclude beyond a reasonable doubt that Appellant was "returned to military control" on March 17, 2003. Jackson v. Virginia, 443

12

U.S. 307, 319 (1979); United States v. Turner, 25 M.J. 324, 325 (C.M.A. 1987); MCM pt. IV, para. 10.c.(10).

Although we conclude that the evidence was insufficient to establish the contested elements of desertion terminating on March 17, 2003, we conclude that Appellant's plea to an unauthorized absence terminating on January 22, 2003 was provident. Appellant argues that under United States v. Phillippe, 63 M.J. 307 (C.A.A.F. 2006), he set up a matter inconsistent with his plea when he claimed to have contacted his recruiter prior to October 29, 2002. He argues that this contact constituted an attempt to voluntarily surrender to military authority, and thereby terminated his absence. MCM pt. IV, para. 10.c.(10)(a). However, unlike Phillippe's unrebutted assertion that he tried to turn himself in at an Air Force Base in person, 63 M.J. at 308, Appellant only claimed that he had "contacted" his recruiter, suggesting something other than physical submission to military authorities. See United States v. Acemoglu, 21 C.M.A. 561, 563-64, 45 C.M.R. 335, 337-38 (1972) (telephone contact insufficient to establish voluntary surrender to military authority). Accepting Appellant's assertions as true, the record does not reflect that he physically presented himself to military authorities for the purpose of surrendering. As such, Appellant set up a "mere possibility" of a conflict, which does not provide a substantial basis for questioning the

13

plea of guilty to the January 22, 2003 termination date.  See

United States v. Shaw, 64 M.J. 460, 462 (C.A.A.F. 2007)

(citations omitted).

### DECISION

The decision of the United States Army Court of Criminal

Appeals as to the finding of guilty of desertion terminating on

March 17, 2003 is reversed and that specification and charge are

dismissed.  A finding of guilty of unauthorized absence in

violation of Article 86, UCMJ, 10 U.S.C. § 886 (2000)

terminating on January 22, 2003, and the remaining findings and

the sentence are affirmed.

STUCKY, Judge (concurring in part and dissenting in part):

At the invitation of Appellant's counsel, the military judge considered Appellant's providence inquiry and stipulation of fact relating to unauthorized absence in deciding whether to convict him of the greater offense of desertion.  In reaching a decision to convict him of desertion, the military judge also considered certain exhibits, the admissibility of which Appellant had stipulated.  The majority concludes the military judge committed prejudicial error by considering these matters. I dissent.

The majority bases its finding of error as to the stipulation on allegedly inconsistent language within that document itself, together with the lack of any indication on the record that the military judge explained the inconsistency to Appellant.  In fact, there was no inconsistency and, therefore, no possibility of confusion on Appellant's part.  In Paragraph I of the "Stipulation of Fact & Admissibility of Evidence," Appellant agreed that the facts therein

> may be considered by the Military Judge in determining the providence of the accused's plea of guilty, and they may be considered by the sentencing authority and on appeal in determining an appropriate sentence, even if the evidence of such facts is deemed otherwise inadmissible.  The accused expressly waives any objection he may have to the admission of the facts into evidence at trial under the Military Rules of Evidence, the United States Constitution, or applicable case law.

(Emphasis added).  Paragraph IV of the document, tracks the

language and intention of the last sentence of Paragraph I,

stating as follows:

> Trial Counsel and Defense Counsel, with the express
> consent of the accused, stipulate that the following
> evidence is admissible at trial, may be considered by
> the military judge in determining the providence of
> the accused's plea of guilty, and may be considered by
> the sentencing authority and on appeal in determining
> an appropriate sentence.

(Emphasis added).  The document then lists several prosecution

exhibits, including the stipulation.  Both parts of the document

signed by Appellant and his counsel envisioned the admissibility

of facts contained in the stipulation, not just during the

providence inquiry but generally at trial.  As such, I would

find no error with the military judge's decision to use the

stipulation when he considered the desertion charge.

The military judge's consideration of the providence

inquiry is another matter.  After the military judge accepted

Appellant's pleas, the trial counsel called one witness to

assist in establishing the greater offense of desertion, and

then rested.  The defense counsel then rested without calling

any witnesses.  The defense's action apparently led the trial

counsel to believe that the defense would argue that Appellant

was not guilty based on matters presented during the providence

inquiry.  The trial counsel raised the issue to the military

judge:  "Your Honor, the government just wanted to clarify that

the providence inquiry will not be considered by the court as a defense to the greater offenses?" The defense counsel responded: "Your Honor, we believe that it can be. We believe the contents of the providence inquiry can be used for proving the elements of the greater offense. Therefore, we believe the defense can also use anything exculpatory elicited in the providence inquiry as well."

The trial counsel then argued that the matters raised in the providence inquiry were to be used solely for determining Appellant's guilt of the offenses to which he was pleading guilty, and were not a permissible means by which Appellant could present a defense without subjecting himself to cross-examination. Defense counsel persisted: "The defense does intend and believes it can use the contents of the providence inquiry, sir." After some further discussion, the military judge determined he could use the stipulation of fact and "everything [he had] heard up to now in determining the guilt or innocence of Private Resch on the greater offense [of desertion]."

The principle that a party may not invite or provoke error at trial and then complain of it on appeal is long established in both civilian and military jurisprudence. Johnson v. United States, 318 U.S. 189, 200 (1943); United States v. Maxwell, 7 C.M.R. 632, 659 (A.F.B.R. 1952). "'[A] party may not complain

3

on appeal of errors that he himself invited or provoked the [lower] court . . . to commit.'" United States v. Wells, 519 U.S. 482, 488 (1997) (quoting United States v. Sharpe, 996 F.2d 125, 129 (6th Cir. 1993)). We have employed the doctrine of invited error on numerous occasions to deny relief. See, e.g., United States v. Dinges, 55 M.J. 308, 311 (C.A.A.F. 2001) (holding any error in the admission of victim testimony was invited because the victim was called as a defense witness during sentencing); United States v. Eggen, 51 M.J. 159, 161-62 (C.A.A.F. 1999) (finding any error in admitting an expert's testimony as to whether the victim faked his emotions was invited by defense counsel's suggestion to that effect); United States v. Anderson, 51 M.J. 145, 153 (C.A.A.F. 1999) (where defense attempt to impeach child witnesses highlighted adverse testimony, defense cannot on appeal retreat from unsuccessful trial strategy); United States v. Raya, 45 M.J. 251, 253-54 (C.A.A.F. 1996) (finding social worker's improper comment on the victim's credibility was invited because the comment was elicited on cross-examination by the appellant's counsel). Any error by the military judge in using the providence inquiry in this case was invited in the most categorical terms by Appellant's trial defense counsel. No further analysis is necessary.

The lack of error in the military judge's consideration of the stipulation, together with the invited error as to the providence inquiry, disposes of Appellant's complaint with regard to the finding of guilty of desertion. I therefore dissent from the majority's decision to reverse the lower court as to the desertion offense. As to the remaining findings and the sentence, I concur.