# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
DUNN, HOLDEN, and SULLIVAN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant NORRIS DAVIS**
**United States Army, Appellant**

ARMY 20041240

Headquarters, Fort Drum
David L. Conn, Military Judge
Lieutenant Colonel James F. Garrett, Staff Judge Advocate
(trial and post-trial recommendation)
Lieutenant Colonel George R. Smawley, Acting Staff Judge Advocate
(post-trial addendum)

For Appellant: Lieutenant Colonel Steven C. Henricks, JA; Major Tyesha E. Lowery, JA; Captain Ryan M. Suerth, JA (on brief).

For Appellee: Colonel John W. Miller II, JA; Lieutenant Colonel Virginia G. Beakes-Read, JA; Lieutenant Colonel Francis C. Kiley, JA; Major Karen J. Borgerding, JA, USAR (on brief).

28 September 2007

------------------------------------
OPINION OF THE COURT
------------------------------------

DUNN, Chief Judge:*

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of indecent acts with a female under sixteen years of age in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ].[1] The military judge convicted appellant, contrary to his pleas, of a second specification of indecent acts with a female under sixteen years of age in

---

* Chief Judge Dunn took final action in this case prior to her reassignment.

[1] Appellant pled not guilty to Charge I (rape), which was dismissed by the military judge pursuant to a pretrial agreement.

violation of Article 134, UCMJ. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for five years, and reduction to Private E1. This case is before the court for review pursuant to Article 66(c), UCMJ.

In this mixed plea case of first impression, we decide whether a military judge can consider an accused's statements made during the guilty plea inquiry when subsequently ruling on the admissibility of evidence during the contested portion of the trial.[2] Although Military Rule of Evidence 104 [hereinafter Mil. R. Evid.] grants the military judge broad authority to consider evidence on interlocutory matters, it does not permit a military judge to consider statements from a guilty plea inquiry when deciding admissibility of evidence during the contested portion of the trial regarding a separate offense. Although we find the military judge erred when he considered appellant's statements made during the providence inquiry when deciding to admit propensity evidence under Mil. R. Evid. 414, we also find that error harmless beyond a reasonable doubt under the circumstances of this case.

## I. BACKGROUND

Appellant, a thirty-three-year-old married infantryman, committed indecent acts upon his two stepdaughters: thirteen-year-old MR, and eleven-year-old LM. Appellant pled guilty to acting indecently with MR on divers occasions over a two-year period between 1998 and 2000. Appellant pled not guilty to acting indecently, on a single occasion, with LM in May 2004.[3] During the contested portion of the case, in addition to calling LM to testify, the government also called MR who related what she saw and did and what her sister said about appellant's acts on LM. MR also testified about the times appellant molested her. Appellant objected to the

---

[2] Appellant alleges the military judge erred by improperly using his admissions during the providence inquiry on Specification 1 of Charge II as proof that appellant was guilty of the contested Specification 2 of Charge II. Given the military judge's prior *express* disclaimer of any such use and specific refusal to consider the stipulation of fact on Specification 1 during findings deliberations on Specification 2, we reject appellant's assertion: "I do not[e] – – that I did make brief reference to the accused plea of guilty when making a determination of whether the event related to [MR] would be admissible under [Mil. R. Evid.] 414, but I used the accused's plea only for the sole basis for making that determination and for no other purpose."

[3] MR was between the ages of seven and nine during the period from 1998 to 2000 when appellant sexually molested her by fondling her and placing his hands on her buttocks, legs, and "private parts." LM was eleven years old in 2004 when appellant sexually molested her by sucking her neck and placing his naked erect penis up the leg of her shorts and against her body near her vagina.

government questioning MR about the molestations to which appellant had already pled guilty in Specification 1 of Charge II.

## Guilty Plea

Before accepting a guilty plea, Article 45, UCMJ, requires the military judge to address the accused personally, explain the rights waived by entry of a guilty plea, and obtain the accused's express waiver of these rights. *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969). In addition, the military judge must ensure an accused understands the provisions of any pretrial agreement and that the parties agree to the terms set forth in the agreement. *United States v. Resch*, 65 M.J. 233, 237 (C.A.A.F. 2007) (citing *United States v. Bartley*, 47 M.J. 182, 186 (C.A.A.F. 1997); *United States v. Green*, 1 M.J. 453, 456 (C.M.A. 1976); R.C.M. 910(f)(4)(A)). In this case, although the military judge fulfilled these requirements, he never informed appellant that his plea of guilty, stipulation of fact, or statements he made during his providence inquiry could later be considered by the court on matters pertaining to the remaining contested charge.

## Trial on the Merits

After appellant pled guilty to indecent acts with MR, the government presented evidence on the merits to prove appellant committed indecent acts with LM. Appellant called no witnesses and did not testify.

## JD's Testimony

In 1992, appellant met his wife, JD, while stationed in Panama. JD already had two daughters when they met: MR, born in 1991, and LM, born in 1992. Appellant and JD married in 1995; the couple had one son in 1996 and another son in 1999. They relocated from Panama in May 1997 to Fort Campbell, Kentucky, where the family lived for four years. Appellant was stationed without his family in Korea from 2000-2001, after which the family moved to Fort Drum, New York. Appellant deployed to Afghanistan in 2003, returning in May 2004. On 27 May 2004, appellant and JD had an argument because JD did not approve of appellant having bought an expensive vehicle. That night, JD went out with some girlfriends to celebrate a birthday and appellant stayed home with the children.

JD returned home around 0200 hours on 28 May, found everyone sleeping, and went to bed. She arose around 0700 hours the next morning and noticed two unusual situations: both girls were already up and out of their rooms and appellant was also out of bed and in their sons' room, playing with the boys. She heard a noise in the kitchen and saw LM and MR by the stairs. They beckoned to JD, whispering they needed her to come downstairs so they could talk to her. Both girls appeared nervous, scared, and shocked. MR told her that something happened last night and that LM had to tell her mother. LM, wringing her hands, looking down,

and shaking, told her mother that appellant molested her the previous evening. JD grabbed a knife from the kitchen, then immediately went upstairs to confront appellant. She found him back in bed, holding a blanket up around his face, with his eyes open, and challenged him, saying "How dare you. How dare you. Messing with my daughter. . . . You don't mess with my daughter. You don't touch my daughter." Appellant responded saying, "What? What are you talking about?" JD grabbed the phone and told appellant she was calling the police. Alarmed, appellant said, "Don't do that. My career will be over. My career will be over." JD told appellant he should have thought about his career before he touched LM and she dialed 911. Although JD had not given appellant any details of LM's allegations, appellant said, "Okay, okay, I'll tell you what happened. It didn't happen *like that*. It didn't happen *like that*. I'll tell you what happened" (emphasis added). The two then began arguing and appellant never told her his version of what happened. The military police arrived and removed appellant. JD subsequently took LM to the hospital for an examination, and later to CID where LM described appellant's sexual acts.

### LM's Testimony

During the contested portion of the trial, LM testified that appellant sexually molested her on the evening of 27 May 2004 when she was eleven years old. LM explained she fell asleep that night in her bedroom under her blanket with the remote control in her hand; she had been watching the Disney Channel. LM awoke to find appellant grabbing the remote control from her, and changing the channel to watch the news. She testified appellant then removed her blanket, took her out of bed, placed her on his lap on a vacant bed in her bedroom, took out his naked erect penis from underneath his clothing, and placed it up the leg of her shorts and against her body near her vagina. While putting his penis inside her shorts, appellant also sucked on LM's neck. After LM heard her sister MR get up to use the bathroom, her stepfather put her back in her bed, placed the covers back on her, and ran out of the room. Appellant later briefly returned to her room, then quickly left again.

### Dr. Pagdin's testimony

Doctor (Dr.) Grant Pagdin, an emergency room physician, performed a sexual assault exam on LM. Doctor Pagdin described LM as about four feet tall, weighing eighty-eight pounds and sexually undeveloped. He testified that LM stated that at the time of the molestation she was wearing clothes, her "father" pulled her on top of him, and pulled his penis out of his pants. He further testified that LM suffered a minor mucosal tear, a "straddle- type" injury, in her vaginal region that appeared fresh.

4

**MR's Testimony**

The government also called MR, who testified she awoke to a loud noise on 27 May 2004 and grew concerned about her sister, LM. MR thought appellant, who had "raised" her, was "doing something to [her] sister." Specifically, she "had a weird feeling that my dad was doing something to . . . her that he [had done] to me when I was younger." MR testified that when she was seven to eight years old, while her mother was not at home, appellant would come to her room at night when she was sleeping. Appellant would open her legs, and put his finger into her vagina.

On 27 May 2004, to create a commotion and help protect her sister, MR went to the bathroom to make noise so appellant would "get off" LM. MR flushed the toilet and then heard a squeaking noise and saw appellant running from LM's room down the hallway. She returned to her room and watched LM's door. She observed appellant return to LM's room, stay a few minutes, and then return to his room. The next morning, while the two girls were brushing their teeth, MR asked LM what appellant had done to her. LM did not want to talk. MR testified LM acted nervous, wrung her hands, remained quiet, and looked down all the time. When the girls went downstairs and while they were washing the dishes, MR again asked LM what had happened and LM told MR about appellant's indecent acts the previous night. MR immediately called their mother downstairs so that LM could tell her mother what appellant had done.

The government questioned MR about the indecent acts appellant perpetrated upon her from 1998 to 2000, to which appellant pled guilty in Specification 1 of Charge II, in order to demonstrate appellant's propensity for such conduct. The following exchange took place:

> DC: Now I have an objection, Your Honor.
>
> MJ: All right. And what's the basis of your objection?
>
> DC: [Mil. R. Evid.] 403.
>
> MJ: All right. Government, why are you seeking to offer testimony about what happened to this witness?
>
> TC: Your Honor, the proffer of evidence that the government offers is evidence of abuse that [MR] suffered as a child . . . under [Mil. R. Evid.] 414(b) which allows evidence of a previous--evidence of previous child sexual offenses.
>
> . . . .

> MJ:  All right. So Defense, what's your position on this evidence as it relates to [Mil. R. Evid.] 414(a)?
>
> DC:  Our position, Your Honor, with regard to [Mil. R. Evid.] 414(a) is that it's not relevant as to whether they (sic) accused committed the offenses that he's currently contesting.  So [Mil. R. Evid.] 414 would allow it to be admissible if it was relevant, but my understanding is that [the] government is essentially going to offer this evidence as evidence of propensity rather than anything directly related to the events of the 27th of May as they are alleged.
>
> MJ:  All right.  But under [Mil. R. Evid.] 414(c), isn't it true that this was intended to be an explicit exception to the prohibition against propensity evidence under [Mil. R. Evid.] 404(b)?
>
> DC:  Well, Your Honor, I still believe that [the] prejudicial effect of hearing that evidence is going to outweigh the--any probative value that the court may glean from hearing the evidence.
>
> MJ:  All right.  Government, what's your response to as I understand it, not a [Mil. R. Evid.] 414(a) objection, meaning that this evidence––it's not the defense contention I take it that this would not conform to the type of evidence admissible under Military Rule of Evidence 414(a).  Is that right?
>
> DC:  Yes, sir.
>
> MJ:  But it's a [Mil. R. Evid.] 403, that the prejudicial effect substantially outweighs any probative value.  Is that right?
>
> DC:  Yes, sir.

The Government then argued MR's testimony would demonstrate appellant's propensity to commit the contested sexual offense and that, because of similarities such as the time of day, the mother's absence, the place of the crime, and the age of the victim, the probative value of the evidence outweighed the prejudicial effect. Defense counsel, on the other hand, argued there were insufficient similarities:  the victimization of MR took place several years before, in a different location, and "were substantially different in terms of the––kind of the mode. . . ."  The military

6

judge then ruled:

> MJ:  All right. Well[,] *taking into account the evidence the court has previously heard with regard to the charged offense to which Staff Sergeant Davis has previously pled guilty*, I do find that there are significant similarities in the charged offense and the offense proffered by the government in this case which they seek to admit under [Mil. R. Evid.] 414. . . (emphasis added).

The military judge overruled the defense objection, allowed MR's testimony on appellant's sexual molestation of her and convicted appellant of indecent acts with LM.

## II. DISCUSSION

When making evidentiary rulings, a military judge is not bound by the rules of evidence.  Mil. R. Evid. 104(a).  *See United States v. Yanez*, 16 M.J. 782, 784 (A.C.M.R. 1983) *pet. denied,* 18 M.J. 292 (C.M.A. 1984) ("Military Rule of Evidence 104(a) substantially changed military practice, by providing that the military judge is not bound by the rules of evidence when determining preliminary questions such as the admissibility of evidence").[4]

The issue in this case is whether, given the broad admissibility provisions of Mil. R. Evid. 104(a), the military judge could consider what appellant said about molesting MR during the providence inquiry in determining whether MR's testimony would be admissible at trial on the contested specification.  We hold that, absent any affirmative waiver by appellant—of which there was none in this case—the military judge could not consider statements made during the providence inquiry for such evidentiary rulings.

"The judicial policy limiting the use of judicial admissions made during a guilty plea inquiry is a long-standing tenet of military justice."  *United States v. Ramelb*, 44 M.J. 625, 628 (Army Ct. Crim. App. 1996)(internal citations omitted).

---

[4] Military Rule of Evidence 104 is based on the corresponding Federal Rule of Evidence which allows trial judges in civilian federal courts to consider hearsay or unauthenticated documents when deciding a question of admissibility.  *Yanez*, 16 M.J. at 784 (citations omitted).  This broad rule, however, may have its limitations.  In *United States v. Light*, 48 M.J. 187, 190 (C.A.A.F. 1998), our superior court left the issue unresolved, but recognized a "tension" between Mil. R. Evid. 104 and the admissibility of evidence of a polygraph examination when addressing the issue of a search warrant.

In *United States v. Grijalva*, 55 M.J. 223, 228 (C.A.A.F. 2001), our superior court delineated the general rule barring admission during a contested case of statements made by an accused during an earlier plea inquiry. Grijalva shot his wife in the back and was charged with attempted premeditated murder. He pled guilty to the lesser included offense of aggravated assault and, in a bench trial, the government successfully proved the charged greater offense. In finding Grijalva guilty, the military judge specifically relied on admissions made during the providence inquiry on the lesser included offense that indicated Grijalva intended to shoot his wife and took actions indicative of premeditation, such as removing his young daughter from the line of fire. *Id.* at 227. While "a guilty plea to a lesser-included offense may be used to establish facts and elements common to both the greater and lesser offense within the same specification," admissions during a providence inquiry relating to a contested element may not be so used. *Id.* at 227-228 (internal quotations and citations omitted). *See also United States v. Gilchrist*, 61 M.J. 785, 794 (Army Ct. Crim. App. 2005) and cases cited therein.

In *Grijalva*, the Court of Appeals for the Armed Forces (CAAF) held it was error for the military judge, in finding the element of premeditation, to consider statements Grijalva made for a purpose not within his limited waiver of the right against self-incrimination. *Grijalva*, 55 M.J. at 228; *see also United States v. Gilchrist*, 61 M.J. at 794-95 n. 17 ("This limited 'knowing and intelligent' waiver of his privilege against self-incrimination did not include authorization to use appellant's statements from the plea inquiry to prove the contested specification.")(internal citations omitted). Further, the CAAF determined that since such an error was of Constitutional dimension, relief was required unless the error was harmless beyond a reasonable doubt. *Grijalva*, 55 M.J. at 228. Examining all the "powerful and uncontested evidence" of Grijalva's guilt, the CAAF concluded the military judge's error was harmless beyond a reasonable doubt. *Id*. *See also Resch*, 65 M.J. at 237 (error was not harmless beyond reasonable doubt when government had no other evidence outside of stipulation of fact).

In the instant case, we deal not with a finding of guilty on a greater offense, but with the admissibility of evidence on a separate but related offense: appellant's molestation of his other prepubescent stepdaughter, LM. Here, the military judge advised appellant his guilty plea to indecent acts with MR waived his right against self-incrimination with regard to that offense. The military judge expressly advised appellant the stipulation of fact would be used for the limited purposes of determining the providence of appellant's guilty plea and an appropriate sentence. The military judge did not inform appellant the stipulation of fact regarding Specification 1 of Charge II might also be used to determine admissibility of evidence in the ensuing contested trial on the merits of Specification 2 of Charge II.

The military judge's consideration of facts from appellant's testimony during the guilty plea inquiry in his ruling on admissibility of propensity evidence under Mil. R. Evid. 414 and 403 amounted to error of a Constitutional dimension. In so

doing, the military judge exceeded the permissible uses to which appellant consented in his waiver of his privilege against self-incrimination.  Because the military judge erred in using information from the guilty plea inquiry to analyze the admissibility of MR's testimony, we will not grant deference to his analysis.  *Cf. United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005) ("[w]here the military judge is required to do a balancing test under M.R.E. 403 and does not sufficiently articulate his balancing on the record, his evidentiary ruling will receive less deference from this court.") (citations omitted).  Instead, we conduct our own independent analysis based only on the information properly before the military judge at the point in time he ruled the contested evidence admissible.  *See United States v. Parker,* 54 M.J. 700, 714 (Army Ct. Crim. App. 2001) (where military judged erred in failing to apply Mil. R. Evid. 403 balancing test, appellate court tested for prejudice by conducting own balancing), *aff'd*, 62 M.J. 310 (C.A.A.F. 2005).

## Admissibility of Propensity Evidence

Beginning "[i]n 1996 th[e] rule against admissibility of bad acts *to prove a propensity* to commit similar acts was turned upside down in cases involving  . . . sexual offenses involving minors."  *United States v. James*, 63 M.J. 217, 219 (C.A.A.F. 2006) (emphasis added).  Military Rule of Evidence 414(a) provides:  "In a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."  Before a military judge admits evidence of other acts of child molestation, the evidence must pass the criteria set out in *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000).  *See James*, 63 M.J. at 220 (*Wright* factors apply to Mil. R. Evid. 414).   Under the *Wright* analysis, the accused must be charged with a child molestation offense, there must be evidence proffered that he committed another offense, and the evidence must be relevant.  *Wright*, 53 M.J. at 482.

Trial defense counsel conceded the evidence of appellant's propensity to commit child molestation was admissible under Mil. R. Evid. 414, but objected that it was unfairly prejudicial under Mil. R. Evid. 403.  In conducting a Mil. R. Evid. 403 analysis on whether to exclude Mil. R. Evid. 414 evidence because its probative value is substantially outweighed by the danger of unfair prejudice, the military judge may consider factors such as "proximity in time to the charged or predicate misconduct; similarity to the charged or predicate misconduct; frequency of the other acts; surrounding circumstances; relevant intervening events; and other relevant similarities or differences."  Drafter's Analysis, Mil. R. Evid. 414, Manual for Courts-Martial, United States, 2005 at A22-37 (*quoting* Report of the Judicial Conference of the United States on the Admission of Character Evidence in Certain Sexual Misconduct Cases).  "In applying M.R.E. 403 to evidence otherwise admissible under M.R.E. 414 we apply an approach balancing numerous factors.  No one factor is controlling, although in a given case it could be."  *United States v. Bare*, 65 M.J. 35, 37 (C.A.A.F. 2007).

9

> Some of the factors to be examined when conducting a balancing test are as follows: Strength of proof of the prior act—conviction versus gossip; probative weight of evidence; potential for less prejudicial evidence; distraction of fact finder; and time needed for proof of prior conduct. Some others include: temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties.

*Wright,* 53 M.J. at 482 (internal citation omitted). *See also United States v. Dacosta*, 63 M.J. 575, 580 (Army Ct. Crim. App. 2006).

In the instant case, the evidence at issue is not only admissible under Mil. R. Evid. 414, it also passes muster under the Mil. R. Evid. 403 balancing test. Appellant was charged with child molestation offenses against two children; there was evidence he committed both, and the evidence of one was relevant to the other. As MR testified, the circumstances of appellant's indecent acts upon her were similar, although not completely parallel, to the acts on LM. Both victims were prepubescent; both were appellant's stepdaughters; both were in their own homes,[5] in bed, sleeping; their mother was out of the house; and appellant engaged in various forms of touching short of sexual intercourse with both victims. "The Rule 403 balancing test should be applied '[i]n light of the strong legislative judgment that the evidence of prior sexual offenses *should ordinarily be admissible*.'" *Wright*, 53 M.J. at 482 (quoting *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997))(emphasis added). Further, in a military judge alone trial, there was "no distraction to the fact-finder." *Id.* There was no less prejudicial evidence available: given appellant's secretive behavior, MR was the only available witness who could provide the relevant evidence.

Additionally, we note MR's testimony was relevant entirely apart from its value in demonstrating appellant's propensity to molest his stepdaughter; her

---

[5] Appellant makes much of the fact that the locations were different and the incidents were years apart. While we include those factors in our balancing test, we do not find those factors compelling: the geographical locations were different because appellant had been reassigned and moved his family from Kentucky to New York; the abuses on both victims occurred in the family home. As for the lapse of time, for a significant part of that time appellant did not have access to either stepdaughter because of his assignments. As MR testified, appellant's abuse of her ceased only when he was assigned to Korea, a period appellant's wife JD testified was a year. JD also testified that appellant left for Afghanistan in 2003 and returned the very month in which the abuse of LM occurred.

testimony explained why she worried what her stepfather might be doing to LM and why MR felt the need to create a commotion. In other words, her deliberate attempt to make noise and get her father out of LM's bedroom made sense because MR knew from firsthand experience there was reason to suspect her father was doing something criminal to her sister. MR's testimony also served to explain her questioning of her sister and her careful attention to LM's body language and behavior, all of which were particularly relevant given appellant's strategy of contesting LM's credibility and attributing LM's statements to some form of instigation by MR.

In sum, entirely apart from the stipulation of fact or appellant's own admissions during the providence inquiry, we find the evidence appellant molested MR was admissible to show his propensity for child molestation as evidence to prove he molested LM; its probative value was not substantially outweighed by the danger of unfair prejudice.

## Harmless Error

While the military judge erred in considering appellant's statements during the guilty plea inquiry on Specification 1 of Charge II when deciding admissibility of the propensity evidence on contested Specification 2 of Charge II, we find the error harmless beyond a reasonable doubt. First, the actual admission of the evidence itself was not error: essentially, the military judge was correct in his ruling but wrong in the methodology he used to reach it. As discussed *supra*, the evidence of the offenses against MR under Mil. R. Evid. 414 and Mil. R. Evid. 403, through MR's own testimony, was properly admissible to show appellant's propensity to commit sexual molestation of LM.

Further, even if MR's testimony about the incidents to which appellant pled guilty was not admissible as propensity evidence, there was ample additional evidence to convict appellant beyond a reasonable doubt of the indecent acts with LM. Most importantly, LM testified in detail about the event. She also made fresh complaints to her sister, her mother, and the physician and nurse who examined her. Doctor Pagdin testified that LM told him about the molestation. LM also made a consistent statement to CID[6] and her physical exam rendered results consistent with

---

[6] Appellant asserted, and continues to assert, LM rendered inconsistent statements, most particularly whether appellant placed his penis in or on her vagina. The criminal investigator who interviewed LM explained that the apparent "inconsistencies" were resolved when the agent provided LM with an anatomically correct doll so that she could demonstrate the body parts to which she was referring. Using the doll, LM made clear that appellant's penis did not go "inside" the "vaginal

(continued . . .)

11

the indecent acts. Her mother, JD, testified to LM's statements. Moreover, JD described the altercation she had with appellant upon confronting him. Even though JD did not specify what LM had told her, appellant's immediate responses demonstrated his guilty conscience. He told JD that his "career [would] be over," "it didn't happen like that," and then tried to prevent JD from calling the police.

MR's other "non-propensity" testimony corroborated LM's story. MR described how she flushed the toilet in order to disrupt appellant. She testified how appellant, showing consciousness of guilt, fled from LM's room after hearing the noise, only to sneak back in later. MR also described LM's look of anguish the next morning and her resulting perception that something wrong had happened to LM. Accordingly, even if the military judge erred by admitting the propensity evidence MR provided, it was harmless beyond a reasonable doubt.

## CONCLUSION

We have considered the remaining assignments of error and matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge HOLDEN and Judge SULLIVAN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)
hole"; instead, the penis went "up next to it." Accordingly, we find the statements were not inconsistent as alleged.